# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **STATE OF LOUISIANA,** | |
| **THROUGH ITS DEPARTMENT** | **CIVIL ACTION** |
| **OF TRANSPORTATION AND** | |
| **DEVELOPMENT** | |
| | |
| **VERSUS** | |
| | |
| **KITION SHIPPING CO., LTD., V.** | |
| **SHIPS SWITZERLAND S.A., ET AL** | **NO. 08-77-A-M2** |
| | |
| **CONSOLIDATED WITH** | **C/W** |
| | |
| **IN RE CRESCENT TOWING &** | **NO. 08-452-A-M2** |
| **SALVAGE, CO., INC., AS OWNER** | |
| **AND OPERATOR OF THE** | |
| **M/V MARGARET F. COOPER,** | |
| **PRAYING FOR EXONERATION FROM** | |
| **OR LIMITATION OF LIABILITY** | |

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 10 days from the date of service of this Notice to file written objections to the proposed findings of fact and conclusions of law set forth in the Magistrate Judge's Report.  The failure of a party to file written objections to the proposed findings, conclusions, and recommendation contained in a Magistrate Judge's Report and Recommendation within 10 days after being served with a copy of the Report shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge that have been accepted by the District Court.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in chambers in Baton Rouge, Louisiana, July 24, 2009.

_____

**MAGISTRATE JUDGE CHRISTINE NOLAND**

# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **STATE OF LOUISIANA,** <br> **THROUGH ITS DEPARTMENT** <br> **OF TRANSPORTATION AND** <br> **DEVELOPMENT** | **CIVIL ACTION** |
| **VERSUS** | |
| **KITION SHIPPING CO., LTD., V.** <br> **SHIPS SWITZERLAND S.A., ET AL** | **NO. 08-77-A-M2** |
| **CONSOLIDATED WITH** | **C/W** |
| **IN RE CRESCENT TOWING &** <br> **SALVAGE, CO., INC., AS OWNER** <br> **AND OPERATOR OF THE** <br> **M/V MARGARET F. COOPER,** <br> **PRAYING FOR EXONERATION FROM** <br> **OR LIMITATION OF LIABILITY** | **NO. 08-452-A-M2** |

## MAGISTRATE JUDGE'S REPORT

This matter is before the Court pursuant to the Ruling dated June 10, 2009 (R. Doc. 60), wherein the Motion to Strike and/or Dismiss the State of Louisiana's *In Rem* Claim (R. Doc. 39) filed by defendant, Kition Shipping Co., Ltd ("Kition Shipping"), and the Cross-Motion Requiring Defendants to Post Security for the State's *In Rem* Claims and to Supplement Discovery Responses regarding Vessel Location ( R. Doc. 41) filed by plaintiff, the State of Louisiana, through the Department of Transportation and Development ("DOTD"), were referred back to the undersigned for further consideration in light of certain arguments raised in the parties' objections to the undersigned's May 4, 2009 Report and Recommendation (R. Doc. 50).

## FACTS & PROCEDURAL BACKGROUND

On February 10, 2007, the oil tanker vessel, M/T KITION ("KITION"), while attempting to undock from Apex Dock No. 2 with a compulsory pilot aboard and three tugs assisting, collided with a pier of the Interstate 10 bridge where it crosses the Mississippi River in Baton Rouge, Louisiana. The collision caused damage both to the vessel itself and to the fendering system that protects the bridge.[1]

Following the collision, the KITION, after offloading her cargo, remained in the Port of Baton Rouge to undergo repairs for damages sustained during the collision. Those repairs were performed by Boland Marine & Manufacturing Co., L.L.C. ("Boland") and were completed on February 26, 2007. After the repairs were completed, a dispute arose between Boland and KITION concerning the costs of repair. On March 1, 2007, Boland filed a complaint in this Court, alleging that full payment had not been received for the repairs it made to the KITION. In the complaint, Boland prayed for relief from this Court, including the arrest and judicial sale of the KITION pursuant to Rule C of the Supplemental Rules for Admiralty Claims. This Court thereafter ordered the U.S. Marshal for the Middle District of Louisiana to arrest the KITION at her berth in the Port of Baton Rouge. On March 2, 2007, the dispute between Boland and Kition Shipping over repair costs was resolved amicably, and the KITION was released from arrest. On that same date, approximately three (3) weeks after the collision with the Interstate 10 bridge, the KITION departed the physical jurisdiction of the Middle District of Louisiana.

---

[1] According to the DOTD's opposition to Kition Shipping's motion to dismiss/strike, the State of Louisiana will incur damages exceeding $10 million to replace the bridge's fendering system.

Nearly a year later, on February 6, 2008, the State of Louisiana, through the DOTD, filed the present suit to recover damages for the repair and replacement of the bridge components that were damaged during the collision with the KITION.  In the complaint, the DOTD asserts both *in personam* claims against the registered owner of the KITION (Kition Shipping), the KITION's insurer (UK Club), and other parties, including the compulsory pilot aboard the KITION and the owners of the tug boats assisting the KITION at the time of the accident, as well as *in rem* claims against the KITION.  In Paragraph 3 of the complaint, the DOTD alleges that "[t]he M/T KITION is within the district or will be within the district while the action is pending" and requested that *in rem* service be withheld.

 The Kition Interests filed an Answer to the DOTD's "Verified Complaint" and "First Verified Complaint" on August 22, 2008, wherein they asserted a limitation of liability defense pursuant to the laws and statutes of the United States.[2]  They have not posted security for the DOTD's *in rem* claims against the KITION.

In its present motion, Kition Shipping seeks to have the DOTD's claims against the KITION struck or dismissed because the DOTD has failed to perfect *in rem* jurisdiction against the KITION by arresting her under Rule C of the Supplemental Rules for Admiralty Claims when it had "every opportunity to do so while the ship was in port for three weeks after the casualty that is the subject of this litigation."

As mentioned above, the DOTD has also filed a cross-motion, seeking to have the Court require the defendants to post security for the State's *in rem* claims against the

---

[2] They contend that, if the defendants are found at fault for the collision that is the subject of this litigation, and not exonerated, then the liability should be limited to the value of the KITION, less costs of repairs, and pending freight at the time of the casualty.  *See*, R. Doc. 19, Seventh Defense.

KITION because the KITION is presumptively liable *in rem* for the destruction of state property, because the Kition Interests have pursued relief under the limitation of liability laws of the United States, and because the Kition Interests have invoked this Court's *in rem* jurisdiction through the filing of affirmative claims in this litigation, including cross-claims, discovery responses, and an objection from the KITION herself.  Through its cross-motion, the DOTD also seeks to have the Court require that discovery/interrogatory responses submitted herein by the Kition Interests be supplemented on a continuing basis concerning the vessel's location.

## LAW & ANALYSIS

I.    **Kition Shipping's motion to strike and/or dismiss:**

   (A)    ***In rem* jurisdiction via seizure/arrest of vessel:**

As discussed in the undersigned's previous report, the central issue in Kition Shipping's motion to strike and/or dismiss is whether the DOTD has perfected *in rem* jurisdiction over the KITION.  There are two (2) ways for a federal court to properly obtain *in rem* jurisdiction over a vessel:  (1) seizure (or arrest, attachment, or process, etc.) of the vessel within the forum court's territorial jurisdiction, and/or (2) consent to jurisdiction.  *Lee v. Pearcy Marine, Inc.*, 1994 WL 759929 (S.D.Tex. 1994).  Seizure is governed by Rule C(3) of the Federal Rules of Civil Procedure, Supplemental Rules for Admiralty and Maritime Claims.[3]  Since the essence of a court's power to exercise *in rem* jurisdiction over

_____

[3] When suit is brought in federal court to execute a maritime lien against a vessel, Rule C permits a district court to "issue an order directing the clerk to issue a warrant for the arrest of the vessel . . . that is the subject of the action."  Fed. R. Civ. P. C(3)(Supplemental Rules for Certain Admiralty and Maritime Claims).  "In the usual course, [in rem] jurisdiction is obtained by serving a warrant of arrest pursuant to Supplemental Rule C(3)."  *Ventura Packers, Inc. v. F/V Jeanine Kathleen*, 424 F.3d 852 (9th Cir. 2005), quoting *United States v. Marunaka Maru No. 88,* 559 F.Supp. 1365,

a vessel is the presence of the vessel within the court's territorial jurisdiction, *in rem* process can only be served within the forum district. *Id.* The DOTD concedes in this case that the KITION has not been within the territorial boundaries of this district at any time since this litigation was filed and has not been arrested, served, seized, or otherwise attached, despite the fact that this suit has been pending for over a year.

The Federal Rules of Civil Procedure are applicable to admiralty actions "except to the extent they are inconsistent with [the] supplemental [admiralty] rules." Fed. R. Civ. P. Supplemental Admiralty Rule A. Thus, under Fed. R. Civ. P. 4(m), when a plaintiff fails to serve a defendant within one hundred twenty (120) days, a court may either dismiss the action without prejudice, or direct that service be effected within a specific time. However, if the plaintiff shows "good cause" for the failure to serve, the court must extend the time for service for an appropriate period. *Borgan v. M/V Sammi Frontier*, 710 F.Supp. 1300 (W.D.Wash. 1988); *Smit Americas, Inc. v. M/T Hobby*, 2001 WL 874772 (E.D.Pa. 2001)(Applying the 120-day time limit of former Rule 4(j) to the service of an *in rem* complaint in admiralty). "To establish good cause, a litigant must demonstrate 'at least as much as would be required to show excusable neglect, as to which simple inadvertence or mistake of counsel or ignorance of the rules usually does not suffice.' Additionally, the claimant must make a showing of good faith and establish 'some reasonable basis for noncompliance within the time specified'." *Systems Signs Supplies v. United States Dep't of Justice*, 903 F.2d 1011, 1013 (5th Cir. 1990).[4]

_____

1368 (D.Alaska 1983).

[4] Although "good cause" is not defined in Fed. R. Civ. P. 4(m), it has been recognized that a determination of good cause turns on the plaintiff's efforts to serve the defendant and whether the defendant will be prejudiced by a delay in service. *National*

In the prior report and recommendation issued relative to Kition Interests' motion to strike and/or dismiss, the undersigned rejected the Kition Interests' argument that dismissal of the KITION should occur because the DOTD failed to arrest the KITION during the three (3) week time period following the collision in question when the KITION remained in this district for repairs, noting that the present lawsuit was not even filed until approximately ten (10) months after the collision (at which point the necessity of arresting the KITION actually arose) and that, if the Kition Interests' argument was applied, it would essentially impose a three (3) week statute of limitations upon the DOTD's *in rem* claim against the KITION, which is improper.

The undersigned also determined that the grounds the DOTD asserted for failing to timely arrest/serve the KITION were sufficient to demonstrate "good cause."  Specifically, the undersigned concluded that the DOTD's attempts to trace the movement of the KITION through the vessel tracking service, known as Lloyd's MIU, and the fact that it had propounded discovery requests upon the Kition Interests in an effort at ascertaining the KITION's location and future schedule constituted reasonable efforts to effect service.  *See, Insurance Co. of North America v. M/V Greenland Saga*, 1997 WL 2519 (S.D.N.Y. 1997); *Itel Container Internat'l Corp. v. Atlanttrafik Express Service, Ltd.*, 686 F.Supp. 438 (S.D.N.Y. 1988)("Good cause" for delay was shown where plaintiffs relied upon the most well-known and commonly used reference work in the maritime industry for identifying vessels and their owners; such reliance was reasonable, and the defendants were not

---

*Union Fire Ins. Co. v. Barney Assoc.*, 130 F.R.D. 291, 293 (S.D.N.Y. 1990); *Black's Law Dictionary* 623 (5th ed. 1979)("Good cause" is a "substantial reason, one that affords a legal excuse . . ., [the finding of which] lies largely in [the] discretion of [the] officer or court to which decision is committed").

prejudiced in that they had actual notice of the proceedings). The undersigned also noted that, at the time of the prior report and recommendation, the Kition Interests had not asserted that such efforts by the DOTD to locate and serve the KITION were insufficient to demonstrate "good cause," nor had they claimed that they would suffer any prejudice if the Court extended the time for effecting service upon the KITION. The undersigned explained that, in instances where courts have found a lack of "good cause" on the plaintiff's part in failing to effect service, justifying the dismissal of a vessel without prejudice, the plaintiff had been dilatory in its efforts at attempting to locate and serve the vessel, which did not appear to have occurred in this case.[5] Finally, the undersigned noted that a defendant should not be able to obtain dismissal of a complaint "just by keeping the res out of the jurisdiction of the court,"[6] which is exactly what the DOTD is contending has

---

[5] *See, Norfolk Shipbuilding and Drydock Corp. v. USNS Truckee*, 629 F.Supp. 779 (E.D.Va. 1985)(dismissing an *in rem* claim where the plaintiff waited until the eve of trial to request an extension of service); *Borgan v. M/V Smmi Frontier*, 710 F. Supp. 1300 (W.D.Wash. 1988)(dismissing complaint where vessel had called in ports and could have been arrested in district where action was commenced); *American Home Assurance Co. v. Glovegold, Ltd.*, 153 F.R.D. 695, 700-701 (M.D.Fla. 1994)(noting that the "[p]laintiff's decision not to seek arrest of the vessel because of the ongoing settlement negotiations was a judgment call that does not now warrant transfer [to another district to perfect service]"); *Sun Pipe Line Co. v. Swan*, 1997 WL 381768 (E.D.Pa. 1997)("[T]he fact remains that it is the defendants' actions, not plaintiffs', that have prevented the effectuation of service. Plaintiffs aver, apparently in good faith, that the tugboat was not within this district at any time during the 120-day service period. Because there is nothing in the record to suggest otherwise, [the court found] that plaintiffs [had] shown good cause for their failure to serve process on" the tugboat); *Smit Americas, Inc. v. M/T Hobby*, 2001 WL 874772 (E.D.Pa. 2001)(During the more than five-year pendency of the suit, the plaintiff elected to make no effort to serve the vessel despite the vessel's numerous port calls within the United States waters and within the forum district; instead, the plaintiff chose to rely for security upon its *in personam* claim against the vessel's owners and insurers. The court therefore dismissed the plaintiff's *in rem* claim against the vessel).

[6] *See, Sun Pipe Line Co. v. Swan*, 1997 WL 381768 (E.D.Pa. 1997), quoting *Itel Container Internat'l Corp. v. Atlanttrafik Express Service, Ltd.*, 686 F.Supp. 438, 444

occurred in this matter.  Following similar jurisprudence where service *in rem* over a vessel had been indefinitely delayed (because the vessel was absent from jurisdictional waters and the plaintiff had no control over the location of the vessel), the undersigned determined that the "reasonable course of action" to take was to allow the plaintiff to serve the KITION if, at any time before the beginning of trial involving the *in personam* defendants, the vessel can be found in this district.[7]  It was therefore recommended that the Kition Interests' motion to dismiss/strike the KITION be denied, as the DOTD should be allowed until the commencement of trial against the *in personam* defendants to perfect service upon the KITION.

In their objections to the undersigned's prior report, the Kition Interests argue, for the first time, that the DOTD has not shown "good cause" for its failure to arrest/serve the KITION and that, even if it has demonstrated "good cause," it should not be allowed until the commencement of trial to perfect service upon the KITION, as such a delay would "severely prejudice" the Kition Interests.  In their argument concerning lack of "good cause," the Kition Interests point out that, just two (2) days after the collision in question, the DOTD's legal department was in contact with representatives of Kition Shipping and invited them to a meeting on March 14, 2007 to discuss the DOTD's plans for repair of the bridge's

---

(S.D.N.Y. 1988)(If Rule 4[m]'s time limits were applied to the service of *in rem* process, the effectiveness of the proceeding *in rem*, which the Supplemental Rules were concerned to preserve, might thus be impaired); *Crispin Co. v. S/S Jowood*, 1973 A.M.C. 2623, 2624 (S.D.N.Y. 1973).

[7] *See, Sun Pipe*, at *3, citing *Itel*, at 445 (Where service *in rem* over a vessel is indefinitely delayed (because the vessel is absent and the plaintiff has no control over the location of the vessel), the reasonable course of action is to allow the plaintiff the opportunity to perfect service *in rem* if, at any time while the action *in personam* goes forward, the vessel can be found in the forum district).

fendering system.  The Kition Interests' counsel also points out that he was in contact with Chad Vosburg, the District Maintenance Engineer for the DOTD, in the days following the accident and provided him with contact information for the Kition Interests and coordinated with him regarding joint inspections and surveys of the damage.  *See*, Affidavit of Robert B. Fisher, Jr., Exhibit "A" to Kition Interests' objections, R. Doc. 53-3.  The Kition Interests claim that, because of such early contacts, the DOTD was aware of and should have arrested/served the KITION while she was still in this district's waters being repaired.[8]  The Kition Interests also contend that the DOTD's use of Lloyd's MIU vessel tracking service does not constitute "good cause" because the chronology of vessel movements evidenced in the Lloyd's MIU tracking reports that the DOTD has submitted as evidence indicate that, "*at the earliest*, th[o]se reports beg[a]n in November 2008."  Thus, according to the Kition Interests, the DOTD waited not only a full year to file the present suit concerning the collision in question, but it also waited an additional nine (9) months after the commencement of this suit before even making an attempt to track the vessel.  The Kition Interests further note that the DOTD waited until November 19, 2008 to propound interrogatories to the Kition Interests inquiring about the KITION's location.  The Kition Interests argue that such evidence "plainly shows that [the DOTD] failed to make any effort

---

[8] Despite the Kition Interests' argument that the DOTD should have promptly recognized its claim against the KITION and arrested it during the three (3) week time period following the collision when she was still within this jurisdiction undergoing repairs, the Kition Interests nevertheless appear to have taken their time in asserting their own claims in this litigation.  For example, the Kition Interests waited for nearly a year after this suit was filed and nearly two (2) years after the collision, until January 6, 2009, to file their own claim for damages against the compulsory pilot aboard the KITION at the time of the accident, even though their counsel expressly indicated, as early as February 8, 2008, that the Kition Interests envisioned filing a cross claim against the pilot.  *See*, R. Doc. 37; R. Doc. 59-2.

whatsoever to serve process on the KITION until months after the usual deadline for service [the 120 day deadline under Rule 4(m) and Local Rule 41.3M] had come and gone," and as a result, the DOTD's request for additional time to effect service should be denied.[9]

The DOTD's "Memorandum in Opposition to the Kition Interests' Objections" to the undersigned's prior report, however, supplies additional information concerning its reasons for waiting to track the vessel's location, which the Kition Interests conveniently omitted from their objections.  Specifically, the DOTD explains that, just two (2) days after suit was filed in this matter, on February 8, 2008, it formally requested that the Kition Interests post security relative to the claims against the KITION, and the DOTD has submitted as evidence an email from counsel for the Kition Interests of that same date, wherein he indicated that he had "no problem, in principle" recommending to the UK Club that it provide a letter of undertaking as security for the DOTD's claims against the KITION as long as the letter of undertaking was for a sum certain in the amount of $12,000.00 and contained a "reduction clause" that was typically included in the U.K. Club's form letter of undertaking allowing the parties to reduce the amount of security upon mutual agreement at a later

---

[9] The Kition Interests also argue that the DOTD was in bad faith in pleading its *in rem* claim in that it pled, in Paragraph 3 of its Verified Complaint, that "[t]he M/T KITION is within the district or will be within the district while the action is pending."  S*ee*, R. Doc. 1, ¶3.  Although this allegation was included so that the DOTD could take advantage of the *in rem* remedy available under Rule C of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, the Kition Interests argue that, at the time of the filing of the Verified Complaint, the DOTD was "fully aware that the KITION was not, in fact, within the district, but that she was involved in the spot trade of crude oil between the west coast of Africa and ports in the Far East."  According to the Kition Interests, its counsel spoke with counsel for the DOTD in December 2007 and January 2008 and informed him that the KITION was not in Louisiana and had no plans to return in the "foreseeable future."  The Kition Interests contend that, because the requirements of Rule C were pled by the DOTD in "bad faith" and are not met in this case, dismissal of plaintiff's *in rem* claims against the KITION is mandated.

date.[10]  *See*, Exhibit A to DOTD's "Memorandum in Opposition to the Kition Interests' Objections," R. Doc. 59-2.  The Kition Interests' counsel also indicated, on that same date, that he would send a copy of the U.K. Club form letter of undertaking "customized to this matter" to the DOTD's counsel, in order to obtain the agreement of the DOTD, before he went back to the U.K. Club to recommend that it issue the letter of undertaking.  *Id.*  The undersigned agrees with DOTD that, based upon the above representations in the email of Kition Interests' counsel, DOTD had good reason to believe that a letter of undertaking would be forthcoming from the Kition Interests in due course and that locating the KITION for arrest/seizure at that time was not necessary.  Furthermore, two (2) months later, in an email dated April 2, 2008, counsel for the Kition Interests again indicated, when he agreed that the Kition Interests would waive service of process, that he would be "glad to discuss lou [the letter of undertaking] with [counsel for the DOTD] at a mutually convenient time."  Thus, as of April 2, 2008, it still appeared that the Kition Interests would execute a letter of undertaking pertaining to the KITION, securing the DOTD's claims, and that arrest and seizure of the vessel by the DOTD would not be necessary.  *See*, Exhibit B to DOTD's "Memorandum in Opposition to the Kition Interests' Objections," R. Doc. 59-3.

On August 22, 2008, the Kition Interests waived *in personam* process and filed an answer to the DOTD's complaint, but the letter of undertaking, or any other form of security, had not been posted by the Kition Interests as of that date.  According to the DOTD, when it became apparent that the Kition Interests might not amicably provide security and that

---

[10] A letter of undertaking is the functional equivalent of a bond, for the purpose of securing a claim against a vessel. *El Paso Production GOM, Inc. v. Smith*, 406 F.Supp.2d 671 (E.D.La. 2005)*; Panaconti Shipping Co., S.A. v. M/V Ypapanti*, 865 F.2d 705, 707-08 (5th Cir. 1989)(finding that a traditional letter of undertaking was sufficient to perfect *in rem* jurisdiction in the absence of an arrest of the vessel).

11

arrest and seizure of the KITION would actually be necessary, it took steps to track the vessel's location and propounded interrogatories to the Kition Interests in an effort at ascertaining the KITION's future schedule and when the vessel might be returning to this judicial district or to the United States.  When the DOTD requested that the Kition Interests regularly supplement their interrogatory responses to supply information as to the KITION's schedule as it becomes available, the Kition Interests refused to do so and filed their present motion to dismiss the DOTD's *in rem* claims against the KITION.

Considering the representations by the Kition Interests' counsel, during the first several months of this litigation, indicating that the UK Club would be amenable to executing a letter of undertaking securing the DOTD's claims against the KITION and the fact that he never advised counsel for the DOTD that such position had changed until he refused to supplement discovery responses concerning the location/schedule of the KITION and filed the present motion to dismiss, the undersigned does not find the DOTD's delay in attempting to locate the KITION for arrest/seizure to be unreasonable.  The DOTD was under the impression that it would not need to formally arrest/seize the KITION and that the matter could be amicably resolved through the use of a letter of undertaking.[11]  For that

---

[11] As with their argument concerning the DOTD's failure to arrest/seize the KITION while she was in this district's jurisdictional waters for three (3) weeks following the collision, the Kition Interests appear to be arguing that the DOTD was somehow dilatory in its decision not to file suit until nearly a year after the collision and in not pursuing security (*i.e.*, a letter of undertaking) until after suit was filed.  However, under the law, the DOTD was entitled to a full year after the accident to investigate its claims and damages and to file suit against the appropriate entities.  Furthermore, the DOTD was not required to seek security for the vessel before it had even filed suit against the vessel relating to the accident.  As long as the DOTD timely filed suit within a year and promptly began seeking security thereafter (as it appears that they did through their email communications with the Kition Interests' counsel just two days after suit was filed), the Court does not find the DOTD's delays to be unreasonable.  Moreover, the communications from the Kition Interests' counsel pertaining to the DOTD's request for

reason and the other reasons discussed in the prior report pertaining to the Kition Interests'

motion to strike and/or dismiss, the undersigned still finds that the DOTD is entitled to

additional time within which to arrest/seize the KITION since it is now apparent that such

issue will not be amicably resolved among the parties.[12]

---

a letter of undertaking/security two days after suit was filed do not indicate that he
believed the DOTD's requests to be dilatory in any manner since he amicably agreed to
submit a form letter of undertaking to the DOTD for review and to recommend to the UK
Club that they provide a letter of undertaking at that time.  Even if Kition Interests'
counsel advised counsel for the DOTD, in December 2007 and January 2008, that the
KITION was not in Louisiana waters and had no plans to return in the foreseeable
future, his representations regarding the letter of undertaking in the early months of this
litigation reasonably induced the DOTD into the belief that actual arrest/seizure of the
KITION would not be necessary and that a letter of undertaking would be executed in
this matter once negotiated among the parties.

[12] Relative to the Kition Interests' contention that the DOTD's allegation in
Paragraph 3 of the Verified Complaint (that "[t]he M/T KITION is within the district or will
be within the district while the action is pending") evidences bad faith, the undersigned
disagrees.  First, the undersigned believes that the DOTD requested that the issuance
of *in rem* process upon the KITION be held in abeyance so as to avoid the needless
cost and time that would be expended upon formal arrest/seizure of the KITION since
the DOTD understood, based upon representations by the Kition Interests' own counsel,
that it would likely be able to obtain security for its claims against the KITION amicably
through a letter of undertaking and would be able to avoid the necessity of
arresting/seizing the vessel.  Furthermore, since the DOTD believed that the Kition
Interests would provide a letter of undertaking or other form of security, which would
have become a substitute for the vessel within this district (regardless of whether the
vessel ever actually returned to this district), the DOTD did not act in bad faith in
alleging that "the property . . . will be within the district while this action is pending," as is
required by Rule C(2)(c) of the Supplemental Rules for Certain Admiralty and Maritime
Claims.  *See, J.K. Welding Co., Inc. v. Gotham Marine Corp.* 47 F.2d 332, 335
(S.D.N.Y. 1931)("The stipulation for value is a complete substitute for the res, and the
stipulation for value alone is sufficient to give jurisdiction to a court because its legal
effect is the same as the presence of the res in the court's custody . . . In other words, it
is as possible to have a voluntary appearance of the res in a suit in rem when the res is
outside of the territorial jurisdiction of the court as it is to have a voluntary appearance in
a suit in personam when the person is outside such jurisdiction).

The undersigned also notes that, for the reasons articulated on pages 11 and 12
of the DOTD's "Memorandum in Opposition to the Kition Interests' Objections,"
*Ferrostaal, Inc. v. HACI Hassan Yardim*, 2006 WL 2819585 (S.D.N.Y. 2006), is

Having determined that the DOTD is entitled to additional time to effect service upon

the KITION, the undersigned must next decide how much additional time should be allowed

in light of the Kition Interests' newly presented arguments concerning prejudice.  In arguing

prejudice, the Kition Interests contend that allowing the DOTD to arrest/serve the KITION

at any time up to the date of trial could hinder their ability to prepare their defense and

prosecute their cross-claim against the compulsory pilot aboard the KITION at the time of

the collision in question, James J. Strahan, Jr.  Specifically, they argue that, in order to

defend themselves, they will be required to show that Strahan exhibited gross negligence

in navigating the KITION into the bridge fender system.  They also argue that they will show

that Strahan's "inexcusable lack of experience, incompetence, and failure of judgment,

training and ability was caused by the State of Louisiana's own actions in creating and

perpetuating a compulsory pilotage system which foreseeably placed incompetent,

improperly trained and unqualified pilots directing the navigation of ships such as the

---

distinguishable from the present matter and does not indicate that the DOTD acted in
bad faith in alleging that the vessel would be within this judicial district during this suit for
purposes of Rule C.  Unlike in the present case, where the vessel was in this district's
territorial waters at one point (at the time of the collision and in the weeks immediately
thereafter), the vessel, in *Ferrostaal*, was never in the territorial waters of the Southern
District of New York since the incident in question had occurred in Jacksonville, Florida;
New Orleans; and Houston.  Additionally, the vessel in *Ferrostaal* had never entered the
territorial waters of the Southern District of New York while the suit was pending.  The
court therefore found that the plaintiff improperly alleged that the vessel "ha[d] been or
[would] be within the territorial jurisdiction of New York" during the pendency of the suit.
The New York court therefore transferred the suit to Jacksonville, Florida, where part of
the incident giving rise to the suit had occurred.  The New York court's decision was
further based upon the fact that the letter of undertaking that had been issued by the
vessel's insurer in that case, as security for the vessel and as a substitute for arresting
the vessel, stated that the litigation should occur in an "appropriate court," which
included courts in Jacksonville, New Orleans, or Houston, where the incident in question
occurred.  Thus, the New York court found that *in rem* jurisdiction existed in courts in
those three cities, even though the vessel was never arrested in the territorial waters of
any of those jurisdictions.

KITION."  The Kition Interests contend that "fairness and equity" demand that they should not be compelled to prepare their defenses and claims without a "reasonable degree of awareness as to which parties will ultimately appear before the Court."

The undersigned, however, agrees with the DOTD that the Kition Interests' above arguments concerning prejudice are illusory, as the Kition Interests, themselves, have already asserted cross-claims against Pilot Strahan in this case and will be preparing their claims, defenses, and arguments relative to him and relative to the DOTD throughout the course of this litigation regardless of whether the KITION is ever arrested/served or not. Moreover, the issue of the KITION's liability in this suit will be litigated regardless of whether it is ever arrested/served since the vessel's insurer is also named as a defendant herein and is solidarily liable to the DOTD for the actions of the KITION.[13]  Accordingly, the undersigned simply does not see how the Kition Interests will be "severely prejudiced" in the preparation of their claims and defenses if the DOTD is allowed until the commencement of trial to serve the KITION.  The undersigned therefore finds that, because the DOTD has demonstrated "good cause" for its failure to arrest/serve the KITION and the Kition Interests will not be significantly prejudiced by allowing the DOTD additional time (up until the commencement of trial against the *in personam* defendants) to arrest/serve the KITION, the undersigned's prior recommendation in that regard should

---

[13]  Under the Louisiana Direct Action Statute, the DOTD can hold the KITION's insurer directly liable for the fault of the KITION even if the DOTD is never able to serve the KITION with process in this district.  Thus, the Kition Interests' argument that they will have to prepare their case differently if the KITION is arrested on the eve of trial lacks merit.  For example, the Kition Interests' argument that the KITION cannot be held liable for the fault of Pilot Srahan (and/or that the State is somehow liable for such fault because of its allegedly defective compulsory pilot system) will be asserted as a defense by the KITION's insurer, just as such argument would be asserted by the KITION itself should it be served/arrested prior to trial.

stand.

**(B)** *In rem* **jurisdiction via consent to jurisdiction by the vessel:**

In the prior report, the undersigned also examined whether *in rem* jurisdiction exists over the KITION by virtue of the vessel having *consented* to such jurisdiction.  The issue in the present case relative to consent is whether the KITION made an appearance:  (1) by responding to certain interrogatory requests of the DOTD, (2) by virtue of the fact that the Kition Interests asserted a denial and a defense relating to the KITION in their answer, and (3) by virtue of the Kition Interests having filed the present motion to dismiss on the KITION's behalf.  In the prior report, the undersigned did not find that any of those actions constituted an appearance on the part of the KITION that could be considered a waiver of its defense regarding *in rem* jurisdiction.  In its objections to the prior report, the DOTD has simply rehashed the same arguments that were asserted in its opposition to the Kition Interests' motion to strike/dismiss, which were previously rejected by the undersigned.  The undersigned has reviewed the conclusions made in the prior report and finds that they are legally sound.[14]  Considering that the DOTD has not asserted any new arguments that

---

[14] The undersigned notes that, even assuming Kition Shipping was not required to deny liability on the part of the KITION as part of its own *in personam* defenses in this compulsory pilot scenario, as the DOTD suggests in its objections to the prior report, the UK Club was nevertheless required to do so since, as the KITION's insurer, it can be held liable for the acts of the vessel.  *See*, DOTD's objections, R. Doc. 54-2, p. 8-9, citing *Probo II London v. M/V Isla Santay*, 92 F.3d 361, 365 (5th Cir. 1996)("In a compulsory-pilot situation, a shipowner can escape *in personam* liability, despite the *in rem* liability of the ship, by proving that the negligence of the ship's personnel did not contribute to the collision").  Thus, the denial and defense relating to the KITION that were asserted by the Kition Interests in their answer do not necessarily constitute a general appearance on the part of the KITION because such denial and defense can be considered essential to establishing the UK Club's *in personam* defenses as the insurer of the KITION.  The UK Club, however, would only be liable for those losses brought about by the actions of the KITION that are covered under the insurance policy it issued regarding the KITION (*i.e.*, under the "Club rules"), not for all actions of the KITION, in

16

would warrant a change of those conclusions, the undersigned's decision that the KITION

has not made a general appearance in this litigation subjecting it to *in rem* jurisdiction

should stand.[15][16]

## II.    The DOTD's cross-motion requiring the Kition Interests to post security for the DOTD's *in rem* claims and to supplement discovery responses regarding vessel location:

In the prior report, the undersigned recommended that the Kition Interests be

required to post security for the DOTD's *in rem* claims against the KITION because the

Kition Interests asserted a limitation of liability defense in their answer.  As explained in the

_____

general.

Additionally, as the Kition Interests point out, the KITION's liability depends not only on whether the compulsory pilot acted negligently, it also depends upon issues such as "the performance of her crew and the seaworthiness of her engines, steering system, navigational equipment, etc."  Thus, even assuming Kition Shipping could not be held liable *in personam* for the KITION's fault arising out of the compulsory pilotage, it (and the UK Club) could nevertheless be held liable for the fault of the ship relative to those other issues and therefore must deny fault on the part of the KITION as part of its *in personam* defenses.

[15] The undersigned also finds no basis for changing her opinion concerning the DOTD's "other arguments in support of *in rem* jurisdiction," discussed on pages 20-21 of the prior report and recommendation.  Accordingly, the undersigned's conclusions relative to those arguments should not be vacated.

[16] Although the DOTD has asserted for the first time, in its objections to the prior report, an argument that the Kition Interests lack standing to assert their motion to strike and/or dismiss the KITION for lack of *in rem* jurisdiction, the undersigned disagrees. While it is true that a prerequisite for a vessel owner to file an answer on behalf of its vessel and defend the vessel on the merits is the filing of a claim of owner, which would subject the vessel to *in rem* jurisdiction, Kition Shipping, through its motion to strike and/or dismiss, is not attempting to file an answer on behalf of the KITION or to defend the vessel on the merits.  Instead, Kition Shipping's motion is entirely procedural and seeks to have the vessel dismissed from this action on jurisdictional grounds only.  The undersigned agrees with the Kition Interests that the DOTD's argument that only a ship owner that has filed a claim of owner has standing to assert a motion to dismiss for lack of jurisdiction over its ship is "illogical" since, by virtue of filing a claim of owner, the ship owner will have waived the ship's *in rem* jurisdictional defenses.

17

prior report, the Limitation of Liability Act, 46 U.S.C. app. §§181, *et seq.*, allows a shipowner to limit its liability for damages arising out of a maritime accident involving a vessel to the "amount or value of the interest of such owner in such vessel, and her freight then pending." *Id.*, §183(a). A shipowner can assert its right to limitation of liability in one of two ways: (1) by petitioning the district court, pursuant to 46 U.S.C. §185, for limitation of liability; or (2) by pleading limitation of liability as a defense in an answer to an earlier filed damage suit pursuant to 46 U.S.C. §183. *Signal Oil & Gas Co. v. Barge W-701*, 654 F.2d 1164 (5th Cir. 1981); *Karim v. Finch Shipping Co.*, 265 F.3d 258, 263 (5th Cir. 2001).[17] To proceed under §185, the shipowner must file its limitation petition "within six months after a claimant shall have given to or filed with such owner written notice of claim" and must post security "equal to the amount of value of the interest of such owner in the vessel and freight." §185.

Although the Fifth Circuit Court of Appeals has held that the six (6) month limitation on proceedings required by §185 is not applicable when a limitation of liability defense is raised in an answer via §183,[18] it has never specifically addressed the issue of whether the

---

[17] The Limitation of Liability Act is now known as 46 U.S.C.S. §§30501, *et seq.*, and the relevant sections for purposes of this report are now 46 U.S.C. §30511 (formerly §185) and 46 U.S.C. §30505 (formerly §183(a)). Since the applicable caselaw refers to those sections by their former numbers, the undersigned also does so within the text of this report for ease of understanding.

[18] *See, Signal*, at 1173. In *Signal*, the Fifth Circuit relied upon the Third Circuit's decision in *The Chickie*, 141 F2d 80, 85 (3d Cir. 1944), wherein it was held that, in view of the historical development of the statute, the time limitation put in Section 185 by the 1936 amendment and made expressly applicable to a proceeding by petition at the suit of the owner, is not to be read into Section 183(a) by implication. The Fifth Circuit also relied upon *The Scotland*, 105 U.S. 24, 26 L.Ed. 1001 (1881), which recognized the right of a vessel owner to raise limitation for the first time in its answer to a complaint and found that it would "often frustrate that right to allow it only to that defendant who is sued within six months of receiving written notice of a claim." *Id.*, at 1173. The Fifth

procedural requirement of §185 regarding the posting of security applies when a shipowner asserts limitation of liability as a defense pursuant to §183.  Furthermore, at least one court has recognized that, while the procedural requirements of §185 are not to be read into §183, when limitation of liability is asserted by way of defense in the answer, there are certain "interlocutory remedies" that a court may impose in its discretion "to prevent loss or depreciation of the vessel by requiring surrender or the posting of security."  *See, The Deep Sea Tankers, Limited v. The Long Branch*, 258 F.2d 757 (2nd Cir. 1958).  None of the parties to this action addressed the issue of whether the procedural requirements of §185 apply to a limitation of liability defense under §183 in any detail in their briefs submitted to the undersigned prior to the issuance of the first report.

In their objections to the first report, however, the Kition Interests now argue that the procedural requirement of posting security found in §185 should not be imposed where a limitation of liability defense has been asserted pursuant to §183.  They cite to the Fifth Circuit's decision in *Signal* in support of that argument; however, as discussed above, in *Signal*, the Fifth Circuit simply held that the six (6) month filing requirement of §185 did not apply to a §183 limitation of liability defense.  The Kition Interests also refer to the Third Circuit case of *Deep Sea Tankers*.  Although the Third Circuit, in *Deep Sea Tankers*, rejected the appellants' argument that the requirements of §185 and §183 are to be read together, the Third Circuit, as noted above, nevertheless recognized that security could be required when a §183 limitation of liability defense is asserted, in the court's discretion to

Circuit made no specific finding, in *The Signal*, regarding whether the requirement of posting security in §185 is applicable to a limitation of liability defense asserted in an answer pursuant to §183.  It simply held that the vessel owner's invocation of the limitation protection via defense was timely, considering that it was asserted in the answer within the time limits allowed under the Federal Rules of Civil Procedure.

prevent loss or depreciation of the vessel.

However, despite the lack of an express holding by the Fifth Circuit on the issue and the fact that the Third Circuit suggested that the posting of security could be required under certain circumstances, the Eastern District of Louisiana has nevertheless held on several occasions, relying upon *Deep Sea Tankers*, that a shipowner is not required to post security when it pleads limitation of liability as a defense under §183. *May v. Falcon Drilling Co., Inc.*, 1995 WL 569210 (E.D.La. 1995); *El Paso Production GOM, Inc. v*. Smith, 406 F.Supp.2d 671 (E.D.La. 2005).  Courts in other jurisdictions have also reached that conclusion.[19]  Accordingly, in order to promote uniformity with other courts, the undersigned finds that its previous recommendation that the Kition Interests be required to post security should be vacated.  While there is some limited support for imposing such a procedural requirement in this matter as a matter of equity and in this Court's discretion[20], the undersigned does not find that support to be strong enough to outweigh the cases holding that the security requirement is inapplicable where limitation of liability has been asserted as a defense.

Finally, in the prior report, the undersigned determined that the Kition Interests had

---

[19] *See, Federazione Italiana Dei Conxorzi Agrari v. Mandask Compania de Vapores*, 223 F.Supp. 206 (D.C.N.Y. 1963)(A requirement of security from the owner is only applicable when the owner files a petition under 46 U.S.C. §185); *Signal Oil & Gas Co. v. Barge W-701*, 468 F.Supp. 802 (D.C.La. 1979); *Corrao v. M/V Act III*, 359 F.Supp. 1160 (D.C.Fla. 1973); *Blunk v. Wilson Line of Washington, Inc.*, 341 F.Supp. 1345 (N.D. Ohio 1972); *Sana v. Hawaiian Cruises, Ltd.*, 181 F.3d 1041 (9th Cir. 1999).

[20] *See, Grindle v. Fun Charters, Inc.*, 962 F.Supp. 1284 (D.Hawaii 1996)(Although the ship owner had raised the limitation of liability defense in its answer, the court required it to post a bond equal to the value of the vessel before it would consider such defense as a safeguard to "eliminate the procedural advantages [the] defendants would have enjoyed from asserting a §183 defense as opposed to a §185 claim").

an obligation, under Fed. R. Civ. P. 26(e), to supplement their discovery responses when they obtain information about the vessel's next upcoming voyage,[21] and that such supplementation shall continue to occur until the discovery deadline expires in this matter. The parties did not present any new arguments concerning this conclusion in their objections to the previous report, and the undersigned finds no reason to vacate that prior conclusion, particularly since the undersigned has elected not to vacate the decision to allow the DOTD until the commencement of trial to attempt to arrest/seize the KITION, and such supplemental discovery responses may assist the DOTD in locating the KITION and serving it.  Accordingly, the undersigned's conclusion that the Kition Interests should be required to supplement their discovery responses concerning the KITION's location should stand.

III.    **The DOTD's request that the Court exclude governmental investigative reports and a newspaper article presented by the Kition Interests as inadmissible:**

In their objections to the undersigned's report, the Kition Interests refer to the investigative reports of the National Transportation Safety Board ("NTSB") and the United States Coast Guard ("USCG") as well as a newspaper article from *The Times-Picayune* relating to the collision in question in an attempt at exonerating the KITION and themselves from liability and at placing fault for the accident upon the compulsory pilot aboard the KITION at the time of the accident.  The DOTD objects to the use of such evidence in these proceedings and requests that the Court exclude/strike all references to such evidence

---

[21] The Kition Interests indicate that information concerning the KITION's "schedule and future itinerary is determined by commercial considerations and the need for that type and size of ship in the trade that she is presently in;" thus, the vessel's schedule and future itinerary is determinable even if only in the short term.  *See*, R. Doc. 44, p. 17.

within the Kition Interests' Memorandum in Support (R. Doc. 53-2), including the references to that evidence set forth in the Affidavit of Robert B. Fisher, Jr. (R. Doc. 53-3, ¶¶5, 13, 15, 19), and the excerpts from that evidence attached as Exhibits 2, 4, and 5 to Mr. Fisher's Affidavit (R. Doc. 53-3).

The DOTD contends that the USCG and NTSB reports are inadmissible based upon 46 U.S.C. §6308(a) and 49 U.S.C. §1154(b) respectively.  The Court agrees.  Pursuant to 46 U.S.C. §6308, no report of a marine casualty investigation conducted under 46 U.S.C. §6301,[22] including findings of fact, opinions, recommendations, deliberations, or conclusions, shall be admissible as evidence or subject to discovery in any civil or administrative proceedings, other than administrative proceedings initiated by the United States.  46 U.S.C. §6308(a).  Such provision appears to require exclusion of the USCG investigative report, and considering that the Kition Interests have presented no timely opposition to the DOTD's request for exclusion, the DOTD's request should be granted.

Similarly, 49 U.S.C. §1154(b) provides that no part of a report of the NTSB, related to an accident or an investigation of an accident, may be admitted into evidence or used in a civil action for damages resulting from a matter mentioned in the report.  49 U.S.C.

---

[22] Section 6301 requires the Secretary to prescribe regulations for the immediate investigation of marine casualties to decide as closely as possible: (1) the cause of the casualty; (2) whether an act of misconduct, incompetence, negligence, unskillfulness, or willful violation of law committed by any individual licensed, certificated, or documented contributed to the cause of the casualty; (3) whether an act of misconduct, incompetence, negligence, unskillfulness, or willful violation of law committed by any person, including an officer, employee, or member of the Coast Guard, contributed to the cause of the casualty; (4) whether there is evidence that an act subjecting the offender to a civil penalty under the laws of the United States has been committed; (5) whether there is evidence that a criminal act under the laws of the Untied States has been committed; and (6) whether there is a need for new laws or regulations, or amendment or repeal of existing laws or regulations, to prevent recurrence of the casualty.  46 U.S.C. §6301.

§1154(b).  Again, the Kition Interests have not timely opposed the DOTD's request that the NTSB report excerpts be excluded, and since such exclusion appears to be required by statute, the DOTD's request will be granted.  Furthermore, even assuming the USCG and NTSB reports are admissible in this proceeding, the undersigned finds the reports to be irrelevant to the present motions.  The conclusions of the USCG and NTSB reports as to who is at fault for the collision in question pertain to the merits of this case.  The merits need not be addressed in the context of the Kition Interests' motion, which requires determination of the procedural issue of jurisdiction only, or in the context of the DOTD's motion, which also requires only a procedural determination relating to the necessity of posting security as well as a discovery ruling. Accordingly, such reports should be excluded.

Finally, the undersigned agrees with the DOTD that the *Times-Picayune* newspaper article constitutes inadmissible hearsay, and because it is irrelevant to the issues presented in the present motions, it should also be excluded.  *Roberst v. City of Shreveport*, 397 F.3d 287, 295 (5th Cir. 2005)(Newspaper articles are not proper summary judgment evidence to prove the truth of the facts that they report because they are inadmissible hearsay); *Perry v. Kemna*, 356 F.3d 880, 889 (8th Cir. 2004)(noting that newspaper articles were hearsay and also unrelated to proceedings); *Stewart v. Wachowski*, 574 F.Supp.2d 1074 (C.D.Cal. 2005)(Even when the actual statements quoted in a newspaper article constitute nonhearsay, or fall within a hearsay exception, their repetition in the newspaper creates a hearsay problem.  Statements in newspapers often constitute double hearsay).[23]

---

[23] *See also, Larez v. Los Angeles*, 946 F.2d 630, 642 (9th Cir. 1991)("As the reporters never testified nor were subjected to cross-examination, their transcriptions of Gates's statements involve a serious hearsay problem"); *United States Football League*

## RECOMMENDATION

For the above reasons, it is recommended that the undersigned's prior recommendation concerning the Motion to Strike and/or Dismiss the State of Louisiana's *In Rem* Claim (R. Doc. 39) filed by defendant, Kition Shipping Co., Ltd, should **STAND** and that such motion should be **DENIED**.  The State of Louisiana, through the Department of Transportation and Development, should be allowed to perfect *in rem* jurisdiction over the M/T KITION through arrest/seizure up until the commencement of trial in this matter.

It is further recommended that the undersigned's prior recommendation concerning the Cross-Motion Requiring Defendants to Post Security for the State's *In Rem* Claims and to Supplement Discovery Responses regarding Vessel Location (R. Doc. 41) filed by the State of Louisiana, through the DOTD, should be **VACATED IN PART**.  Specifically, that motion should be **GRANTED IN PART**, in that the Kition Interests should be required to promptly supplement their discovery responses whenever they receive new or corrective information concerning the KITION's location and upcoming voyage(s), until the discovery deadline expires in this matter, and **DENIED IN PART**, in that the Kition Interests should not be required to post security as a result of their having pled a limitation of liability defense in their answer.  It is further recommended that the DOTD's request to have the NTSB and USCG reports and the *Times-Picayune* newspaper article offered as evidence by the Kition Interests, and all references thereto, excluded should be **GRANTED**.[24]

---

*v. Nat'l Football League*, 1986 WL 5803, *2 (S.D.N.Y. 1986)(holding statements of belief by unknown declarants reiterated in a newspaper article constituted hearsay within hearsay).

[24] Thus, the Court should exclude/strike all references to such evidence within the Kition Interests' Memorandum in Support (R. Doc. 53-2), including the references to

Signed in chambers in Baton Rouge, Louisiana, July 24, 2009.

_____

**MAGISTRATE JUDGE CHRISTINE NOLAND**

---

that evidence set forth in the Affidavit of Robert B. Fisher, Jr. (R. Doc. 53-3, ¶¶5, 13, 15, 19), and the excerpts from that evidence attached as Exhibits 2, 4, and 5 to Mr. Fisher's Affidavit (R. Doc. 53-3).